Christian J. Rowley (SBN 187293)
Seyfarth Shaw LLP
crowley@seyfarth.com
Robin Devaux (SBN 233444)
rdevaux@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, CA 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Jill A. Porcaro (SBN 190412)
Seyfarth Shaw LLP
jporcaro@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendant
WELLS FARGO BANK, N.A. and GEORGE SARKIS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME TORRES, ATA ROUHI and, ELIZABETH ROMERO, individual(s) and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, GEORGE SARKIS, RAUL VASQUEZ, and DOES 1 through 50 inclusive,<br><br>Defendants. | Case No. 2:17-cv-9305<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT PURSUANT TO 28 U.S.C. §§ 1332(d)(2), 1441 and 1446**<br><br>*[Filed concurrently with Notice of Interested Parties, Corporate Disclosure Statement, Civil Cover Sheet, Declaration of Jill A. Porcaro and Declaration of Diana Brandenburg in Support Thereof]*<br><br>[Los Angeles Superior Court Case No.: BC680959]<br><br>Complaint Filed: October 25, 2017<br>Trial Date: None |

DEFENDANT WELLS FARGO BANK, NA'S NOTICE OF REMOVAL

43363137v.3

# **TABLE OF CONTENTS**

**Page**

I. BACKGROUND ..................................................................................................1

II. TIMELINESS OF REMOVAL .........................................................................2

III. JURISDICTION BASED ON CAFA ..............................................................2

IV. AMOUNT IN CONTROVERSY .....................................................................6

V. VENUE ...............................................................................................................13

VI. NOTICE OF REMOVAL ...............................................................................13

VII. NO JOINDER REQUIRED ...........................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abrego v. The Dow Chemical Co.*,
 443 F.3d 676 (9th Cir. 2006) ..............................................................................................14

*Coleman v. Estes Express Lines, Inc.*,
 2010 U.S. Dist. LEXIS 79772 (C.D. Cal. 2010)..................................................................11

*Dodson v. Spillada Maritime Corp.*,
 951 F.2d 40 (5th Cir. 1992) ..................................................................................................4

*Fristos v. Reynolds Metals Co.*,
 615 F.2d 1209 (9th Cir. 1980) ..............................................................................................6

*Galt G/S v. JSS Scandinavia*,
 142 F.3d 1150 (9th Cir. 1998) ............................................................................................12

*Gaus v. Miles, Inc.*,
 980 F.2d 564 (9th Cir. 1992) ................................................................................................7

*Hanlon v. Chrysler Corp.*,
 150 F. 3d 1011 (9th Cir. 1998) ..........................................................................................12

*Kroske v. U.S. Bank Corp.*,
 432 F.3d 976 (9th Cir. 2005) ................................................................................................7

*Lewis v. Time, Inc.*,
 83 F.R.D. 455 (E.D. Cal. 1979), affd, 710 F.2d 549 (9th Cir. 1983)................................4, 5

*Martinez v. Combs, 49 Cal. 4th 35, 71-76* (2010).......................................................................... 5

*McCabe v. Gen. Foods Corp.*,
 811 F.2d 1336 (9th Cir. 1987) .........................................................................................4, 5

*Morris v. Princess Cruises, Inc.*,
 236 F.3d 1061 (9th Cir. 2001) ..............................................................................................4

*Muniz v. Pilot Travel Centers, LLC*,
 2007 WL 1302504 (E.D. Cal. May 1, 2007) ......................................................................13

*Muniz v. Pilot Travel Centers LLC*,
 2007 U.S. Dist. LEXIS 31515 (E.D. Cal. 2007)..................................................................11

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
 526 U.S. 344 (1999)..............................................................................................................2

*Ritchey v. Upjohn Drug Co.*,
 139 F.3d 1313 (9th Cir. 1998), cert. denied, 525 U.S. 963 (1998) .......................................4

*Roth v. Comerica Bank,* 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010)........................................ 7

*Singer v. State Farm Mutual Ins.,* 116 F. 3d 373, 377 (9th Cir. 1997) ........................................ 7

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
   904 F. 2d 1301 (9th Cir. 1990) ............................................................................................... 12

*State Farm Mut. Auto Ins. Co. v. Dyer*,
   19 F.3d 514 (10th Cir. 1994) ..................................................................................................... 3

*Staton v. Boeing Co.*,
   327 F. 3d 938 (9th Cir. 2003) .................................................................................................. 12

*United Steel, Paper & Forestry, Rubber Manufacturing Energy, Allied Industrial &*
   *Service Workers International Union*, *AFL-CIO, CLC v. Shell Oil Co.*,
   549 F.3d 1204 (9th Cir. 2008) ................................................................................................. 14

*Wachovia Bank v. Schmidt*,
   546 U.S. 303 (2006) ................................................................................................................... 3

*Wells Fargo Bank, N.A. v. WMR e-Pin, LLC, et.al.*,
   2008 WL 5429134 (unpub. op.) (D. Minn. 2008) ..................................................................... 3

*Zacharia v. Harbor Island Spa, Inc.*,
   684 F.2d 199 (2d Cir. 1982) ...................................................................................................... 7

**State Cases**

*Bradstreet v. Wong*,
   161 Cal. App. 4th 1440 (2008) .................................................................................................. 5

*Lazar v. Hertz Corp.*,
   69 Cal. App. 4th 1494 (1999) .................................................................................................... 9

*Reynolds v. Bement*,
   36 Cal. 4th 1075 (2005) ............................................................................................................ 5

**Federal Statutes**

28 U.S.C. § 1332(d)(2) ........................................................................................................ 1, 2, 13

28 U.S.C. § 1332(d)(6) ................................................................................................................. 6

28 U.S.C. § 1338 ......................................................................................................................... 13

28 U.S.C. § 1348 ........................................................................................................................... 3

28 U.S.C. § 1391(b) .................................................................................................................... 13

28 U.S.C. § 1441 ........................................................................................................................... 1

28 U.S.C. § 1441(a) ........................................................................................................... 2, 6, 13

28 U.S.C. § 1446 ........................................................................................................................... 1

28 U.S.C. § 1446(b) ...................................................................................................................... 2

28 U.S.C. § 1453(b) ..................................................................................................14

Class Action Fairness Act of 2005, 28 U.S.C. § 1332 ........................................... *passim*

**State Statutes**

Business & Professions Code §§ 17200, *et seq.* ..................................................2, 9

Cal. Civ. Proc. Code § 340(a) .................................................................................11

Cal. Labor Code § 226(e) ........................................................................................12

California Labor Code §§ 201-203 ...........................................................................1

California Labor Code § 203 ...................................................................................10

California Labor Code § 226 (a) .............................................................................11

California Labor Code § 226.7 .................................................................................9

California Labor Code §§ 226.7, 512 .......................................................................1

California Labor Code §§ 1194, 500 *et seq.* ............................................................1

California Labor Code § 1197 ..................................................................................1

Labor Code § 226 ....................................................................................................11

Labor Code §§ 226, 1174 .....................................................................................1, 11

National Banking Act ................................................................................................3

**Regulations**

IWC Wage Order 4, § 7 .......................................................................................1, 11

Senate Judiciary Committee Report, S. REP. 109-14 ..............................................6

Wage Order 4, § 11-12 ..............................................................................................1

**Other Authorities**

S. REP. 109-14 ......................................................................................................6, 7

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to **28 U.S.C. §§1332(d)(2), 1441 and 1446**, Defendant Wells Fargo Bank, N.A., erroneously sued herein as "Wells Fargo Bank" ("WFB") hereby removes to this Court, the state court action described below filed in the Superior Court of the State of California, for the County of Los Angeles. This Court has original federal jurisdiction over this action based on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332. The removal is proper for the following reasons:

**I.    BACKGROUND**

1. On or about October 25, 2017, Plaintiffs Jaime Torres ("Torres"), Ata Rouhi ("Rouhi") and Elizabeth Romero ("Romero") (collectively "Plaintiffs") filed a complaint against WFB in the Superior Court of the State of California for the County of Los Angeles, captioned *Jaime Torres, Ata Rouhi and Elizabeth Romero, individual(s) and on behalf of all others similarly situated v. Wells Fargo Bank and DOES 1 through 50 Inclusive*, Case Number BC 680959 (the "Complaint"). A true and correct copy of the Complaint in this action is attached hereto as Exhibit A. A true and correct copy of the Summons in this action is attached hereto as Exhibit B.

2. The Complaint purports to assert three claims for relief stemming from Plaintiff's employment with WFB and WFB's alleged failure to comply with (as to Plaintiffs and a purported class of similarly situated individuals) the requirements set forth in California Labor Code §§ 226.7, 512 and the IWC Wage Orders (Wage Order 4, Section 11-12) (failure to provide meal and rest breaks),[1] §§ 1194, 500 *et seq*. (failure to pay overtime compensation),[2] §§ 226, 1174 and the IWC Wage Order 4, Section 7

---

[1] Complaint ¶¶ 17(c), 27-32.
[2] Complaint ¶¶ 16, 17(a), 19, 27.

(failure to maintain required records),[3] § 1197 (failure to pay minimum wage),[4] §§ 201-203 (failure to pay wages upon termination),[5] and Business & Professions Code §§ 17200, *et seq.* (unfair competition).[6]

3. Plaintiffs filed this action as a putative class action. Plaintiffs seeks to represent: "All California based Branch Managers who worked at any time during the four years preceding the filing of the Raymond Ray v. Wells Fargo on January 7, 2011, up until the date of class certification[.]"

4. On or about December 29, 2017, WFB and George Sarkis filed their Answer to the Complaint in the Superior Court, County of Los Angeles. A true and correct copy of WFB and George Sarkis' Answer to the Complaint, which was served on Plaintiffs on December 29, 2017, is attached hereto as Exhibit C.

5. Exhibits A through C constitute all of the pleadings served on WFB and George Sarkis and filed by WFB and George Sarkis in the Los Angeles Superior Court in this action.

## II. TIMELINESS OF REMOVAL

6. WFB was served with the Summons and Complaint on November 30, 2017. George Sarkis was served with the Summons and Complaint in this matter on December 4, 2017. Thus, this Notice of Removal is timely as it is filed within thirty (30) days of service on WFB of the Summons and Complaint that revealed that this case was properly removable. 28 U.S.C. § 1446(b). *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

## III. JURISDICTION BASED ON CAFA

7. The Court has original jurisdiction of this action under CAFA, codified in relevant part in 28 U.S.C. § 1332(d)(2). As set forth below, this action is properly removable, pursuant to the provisions of 28 U.S.C. §§ 1441(a), as the action (i) involves

---

[3] Complaint ¶ 18.
[4] Complaint Prayer ¶ 2.
[5] Complaint ¶¶ 35-37.
[6] Complaint ¶¶ 26-33.

100 or more putative class members; (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) at least one member of the putative class is a citizen of a state different from that of at least one defendant.

8. **Plaintiffs' Citizenship**. The Plaintiffs were at the time this action commenced and, based on information and belief, still are, a residents and citizens of the State of California. Residence is *prima facie* evidence of domicile. See *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). Plaintiffs worked for WFB in California.[7] WFB's records reflect that Plaintiffs Jaime Torres and Ata Rouhi resided in California at all times during their employment with WFB.[8] Also, a review of public records relating to Plaintiffs Jaime Torres and Ata Rouhi reflect that presently, and during their employment with WFB, they resided in California.[9] Accordingly, Plaintiffs Jaime Torres and Ata Rouhi are citizens of California. Based on information and belief Plaintiff Elizabeth Romero worked for WFB in California and is a citizen of California.

9. **Defendant WFB's Citizenship.** WFB is a federally chartered national banking association that is organized and exists under the National Banking Act, with its main office (as identified in its articles of association) in South Dakota. Thus, under 28 U.S.C. § 1332, WFB is not a citizen of California, and is only a citizen of South Dakota. See 28 U.S.C. § 1348 ("All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located."); *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) ("we hold that a national bank, for Section 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located"); *Wells Fargo Bank, N.A. v. WMR e-Pin, LLC, et.al.*, 2008 WL 5429134, *1 (unpub. op.) (D. Minn. 2008) (holding under the Supreme Court's Wachovia Bank case that Wells Fargo Bank, N.A., as a national bank, is only a citizen of South Dakota and is not a citizen of California).

---

[7] Complaint ¶ 2.
[8] See Declaration of Diana Brandenburg ("Brandenburg Dec.") ¶¶ 5.
[9] Declaration of Jill A. Porcaro ("Porcaro Dec.") ¶¶ 3-4, Exhibits 1-2.

10. **<u>Individual Defendants George Sarkis and Raul Vasquez.</u>** The individual defendant George Sarkis ("Sarkis") at the time this action commenced is a resident of Arizona and a citizen of the State of Arizona.[10] The individual defendant Raul Vasquez ("Vasquez") (Sarkis and Vasquez are collectively referred to herein as "Individual Defendants") at the time this action commenced and, based on information and belief, is a resident of California and a citizen of the State of California.[11] As is discussed below, however, the Individual Defendants are sham defendants as Plaintiffs cannot assert any colorable claim against them based on the allegations in the Complaint.

11. The Individual Defendants must be disregarded for purposes of diversity because they are sham defendants; that is, they cannot be found liable as a matter of law. See, e.g., *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (holding that removal based on diversity of citizenship was proper and that district court "correctly ignored" joinder of a resident defendant after it was shown that plaintiff "could not possibly prevail" on her claim against the resident defendant); *Dodson v. Spillada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) (finding fraudulent joinder of non-diverse defendants where there was "no possibility that [plaintiff] would be able to establish a cause of action against them"), *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) ("[F]raudulently joined defendants will not defeat removal on diversity grounds."), cert. denied, 525 U.S. 963 (1998); *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) ("If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent."); *Lewis v. Time*, Inc., 83 F.R.D. 455, 460 (E.D. Cal. 1979), affd., 710 F.2d 549 (9th Cir. 1983) (a sham defendant is to be ignored for purposes of removal).

12. Joinder of a defendant is fraudulent if the defendant cannot be liable to the plaintiff on any theory alleged in the complaint. *Ritchey*, 139 F.3d at 1318 ("If the

---

[10] Brandenburg Dec. ¶ 10.
[11] *Id.*

4

plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent.") (quoting McCabe, 811 F.2d at 1339)).

13. When determining whether a defendant is fraudulently joined, "[t]he court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Lewis*, 83 F.R.D. at 455 ("[I]t is well settled that upon allegations of fraudulent joinder . . . federal courts may look beyond the pleadings to determine if the joinder . . . is a sham or fraudulent device to prevent removal."); *McCabe*, 811 F.2d at 1339 (a defendant "is entitled to present the facts showing the joinder to be fraudulent").

14. Plaintiffs have fraudulently named Sarkis and Vasquez as defendants to each of their claims in the Complaint. Sarkis terminated his employment with WFB on or about August 31, 2008.[12] Vasquez terminated his employment with WFB on or about June 30, 2012.[13] Accordingly, there is no claim that Plaintiffs could allege against the Individual Defendants under any applicable statute of limitations in the Complaint. Also, the alleged tolling does not apply to Plaintiffs' claims against the Individual Defendants because they were not named as defendants in the prior *Ray v. Wells Fargo Bank* action, upon which Plaintiffs premise the tolling of their claims.

15. Notwithstanding, even if not time-barred, Plaintiffs claims against George Sarkis and Raul Vasquez still fail because they cannot be held liable as a matter of law for wage and hour violations, including each of the claims alleged by Plaintiffs in their Complaint. See *Reynolds v. Bement*, 36 Cal. 4th 1075 (2005) and *Martinez v. Combs*, 49 Cal. 4th 35, 71-76 (2010) (contract between strawberry farmer and first produce merchant did not require merchant to pay workers where farmer failed to pay because merchants did not exercise control over workers' wages and hours and, thus, were not "employers" liable for unpaid minimum wages under IWC's wage order).

---

[12] See Brandenburg Dec., ¶ 10.
[13] See *Id*.

5

DEFENDANT WELLS FARGO BANK, NA'S NOTICE OF REMOVAL

43363137v.3

16. **Doe Defendants.** Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristos v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition). Thus, the existence of Doe Defendants one through fifty, inclusive, does not deprive this Court of jurisdiction.

## IV. AMOUNT IN CONTROVERSY

17. The claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. REP. 109-14, at 42. Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. REP. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case….' Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

18. When the amount in controversy is not apparent from the face of the Complaint, a defendant may state underlying facts supporting its assertion that the amount controversy exceeds the jurisdictional threshold. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992). The court may also consider facts in the removal petition, and may "'require parties to submit summary-judgment type evidence relevant to the

amount in controversy at the time of removal.'" *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010), quoting *Singer v. State Farm Mutual Ins.*, 116 F. 3d 373, 377 (9th Cir. 1997); *See also Kroske v. U.S. Bank Corp.,* 432 F.3d 976, 980 (9th Cir. 2005). Affidavits can establish particular elements of damages. *Zacharia v. Harbor Island Spa, Inc.,* 684 F.2d 199, 202 (2d Cir. 1982).

19. Under this approach, and assuming *arguendo* that Plaintiff obtains class certification (which Defendant believes he will not), the alleged amount in controversy in this class action exceeds, in the aggregate, $5,000,000 to a legal certainty. The Complaint alleges a putative class that consists of all of WFB's Branch Managers employed in the state of California dating back through January 7, 2011, to the present, except for its Branch Managers whose claims were resolved pursuant to the Class Action Settlement in the Wells Fargo Bank Manager Wage and Hour Cases JCCP No. 4723 (hereinafter referred to as the "Branch Manager Settlement Class"). The Branch Manager Settlement Class consist of:

- **Level 1 bank branch manager**
All persons employed by Defendant [WFB] as bank branch Store Managers who worked in a Level 1 Wells Fargo Store at any time between January 7, 2007 through January 12, 2017.

- **Level 2 bank branch manage**r
All person employed by Defendant in the State of California as bank branch Store Managers who worked in a Level 2 Wells Fargo Store at any time between January 7, 2007 through November 1, 2013.

See Complaint ¶ 17.

20. During the period of January 7, 2007 through the present (the "Putative Class Period"), WFB employed approximately 1,269 Store Managers in California who are not members of the Store Manager Settlement Class.[14] Those store managers worked approximately 142,935 workweeks during the period of January 7, 2007 through December 12, 2017.[15]

---

[14] *See* Brandenburg Dec., ¶ 6.
[15] *See* Brandenburg Dec., ¶ 6.

7

DEFENDANT WELLS FARGO BANK, NA'S NOTICE OF REMOVAL

43363137v.3

21. During the period of January 7, 2010 through the present, WFB employed at approximately 862 Branch Managers who are not members of the Branch Manager Settlement Class (and are therefore members of the instant putative class.[16] Those Branch Managers worked approximately 45,363 pay periods (or approximately 22,681.5 workweeks) during the period of January 7, 2010 through December 12, 2017.[17]

22. Approximately 434 WFB of WFB's Branch Managers in California who are not members of the Branch Manager Settlement Class (and therefore members of the instant putative class) either resigned, retired, or were terminated during the period of January 7, 2008, through December 12, 2017.[18]

23. The Complaint seeks to recover for alleged unpaid wages for failure to provide meal and rest periods and for failure to pay overtime wages, penalties, injunctive relief, restitution and disgorgement of all sums obtained through alleged unfair business practices, and attorneys' fees and costs.[19] Plaintiffs specifically seek restitution for all wages and other monies allegedly withheld from them (and other Branch Managers who are Putative Class Members) based on a purported failure to provide them with overtime and meal and rest periods.[20] Plaintiffs' overtime claims extends back to January 7, 2007 based on their contention that Plaintiffs' claims and the claims of the Putative Class Members were tolled as of the "filing of the Raymond Ray v. Wells Fargo Bank, Case No. BC452740 on January 7, 2011 and continued to be tolled during the Wells Fargo Bank Managers Wage And Hour Cases JCCP No. 4723…".[21] Plaintiffs allege no cap on

---

[16] *See* Brandenburg Dec., ¶ 7.
[17] *See* Brandenburg Dec., ¶ 7.
[18] *See* Brandenburg Dec., ¶ 8.
[19] Complaint ¶¶ 25, 37; Prayer for Relief, pp. 1-5.
[20] Complaint, Prayer for Relief, pp. 2-4 (parts 2b, 3c, 4b-c).
[21] Complaint ¶ 2. The statute of limitations for Plaintiffs' overtime claim is based on the four-year statute of limitations period adopted by California's "unfair competition law," codified as Business and Professions Code § 17200 *et seq*. The unfair competition law "borrows" violations of other laws and makes those unlawful practices actionable under the unfair competition law. *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999).

8

the amount of damages they are seeking pursuant to their class claims.[22]  As set forth below, in light of the Plaintiff's class-wide allegations, the amount in controversy easily exceeds $5,000,000.

24.    All calculations supporting the amount in controversy are based on the Complaint's allegations (along with other documents as identified herein), assuming, without any admission, the truth of the facts alleged and assuming liability is established.

25.    **Unpaid Meal/Rest Break Compensation**.  Plaintiffs seeks recovery on behalf of themselves and the putative class members for alleged (1) failure to provide meal periods, and (2) failure to provide rest breaks.  Pursuant to California Labor Code § 226.7, the money owed for a meal period or rest break that is not provided as required by the applicable California Wage Order is one hour of an aggrieved employee's pay for each day that a meal period is not provided and one hour of pay per day for each day that a rest break is not provided.  Based on the allegations that "Defendants failed to provide Plaintiffs and class members the required 'off-duty' rest and meal periods",[23] that "Defendants routinely interrupted and/or failed to permit, authorize and/or provide Plaintiffs and the class members' meal and rest breaks"[24] based on a "systematic and clandestine scheme"[25] and, then assuming only one violation per pay period (meal or rest) per work week during the three-year limitations period (extending back through January 7, 2008 based on Plaintiffs' tolling allegations), the total amount in controversy = **$3,719,689.47** (123,291 [workweeks] x $30.17 [hourly wage]).[26]

---

[22] Complaint Prayer for Relief, pp. 15-16 (parts 1-6).
[23] Complaint ¶ 17(c).
[24] Complaint ¶ 32.
[25] Complaint ¶ 3.
[26] The average median annual salary of WFB's California store managers during the Putative Class Period is at least $62,753.60.  *See* Brandenburg Dec., ¶¶ 6 and 9.  Taking the median annual salary figure of $62,753.60, the median hourly rate for store managers employed in California is $30.17 (the quotient of $62,753 divided by 52 weeks per year divided by 40 hours per week).

26. **Overtime Compensation**. Plaintiffs separately allege that they and putative class members were misclassified as exempt from California's overtime requirement and were regularly scheduled as to work and in fact worked in excess of eight hours per workday and/or in excess of forty hours per workweek without receiving overtime compensation.[27] Plaintiffs specifically allege that "[s]tatistically, *one hundred percent of the class members were paid on a salary basis with no overtime compensation.*"[28] (Emphases added).

27. Taking into account, Plaintiffs' class wide allegations that WFB regularly scheduled and required all bank Branch Managers to work overtime, and using a conservative estimate of one hour of alleged unpaid overtime compensation per work week, the amount in controversy based on this claim would be the sum of **$6,468,523.42** (142,935 work weeks x $30.17[hourly wage] x 1.5).[29]

28. **Waiting-Time Penalties**. Plaintiffs also seeks to recover penalties for alleged violations of California Labor Code § 203, for failure to pay former employees all wages due and payable at the time of termination of employment. If Plaintiff prevails on this claim on a class-wide basis, each class member whose employment was terminated during the class period could be entitled to up to 30 days' wages. From January 7, 2008 through December 12, 2017, 434 store managers (who were not settlement class members in the prior class action lawsuit) in California have quit, retired, or been terminated.[30] Assuming that these store managers who quit, retired, or were terminated would be entitled to eight hours of pay for 30 days in penalties, then potential exposure for the waiting time penalties amounts to ($30.17 median hourly rate for Branch Managers) × (8 hours per day) × (30 days) × (434 store managers who quit, retired, or were terminated) = **$3,142,507.20**.[31]

---

[27] Complaint ¶ 16.
[28] Complaint ¶17(a).
[29] *See* Brandenburg Dec., ¶¶ 6, 9.
[30] *See* Brandenburg Dec., ¶ 8.
[31] *See* Brandenburg Dec., ¶¶ 8, 9.

10

DEFENDANT WELLS FARGO BANK, NA'S NOTICE OF REMOVAL

43363137v.3

29. **<u>Record Keeping Penalties</u>**. Plaintiffs also allege violations of California's record-keeping requirements, including those under Labor Code §§ 226, 1174 and the IWC Wage Orders (Wage Order 4, Section 7). Under these provisions, Plaintiffs may recover penalties on behalf of themselves and the putative class members for alleged violations of California Labor Code § 226(a).

30. The statute of limitations for recovery of penalties under Labor Code §226 is one year (which, based on Plaintiffs' tolling allegations, extends back through January 7, 2010). Cal. Civ. Proc. Code §340(a).

31. Courts have assumed a 100% violation rate in calculating the amount in controversy for removal purposes when the complaint does not allege a more precise calculation. See, *e.g., Coleman v. Estes Express Lines, Inc*., 2010 U.S. Dist. LEXIS 79772 at *18-19 (C.D. Cal. 2010) ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate"); *Muniz v. Pilot Travel Centers LLC*, 2007 U.S. Dist. LEXIS 31515 at *11-13 (E.D. Cal. 2007) (concluding that plaintiff was the "master of [her] claims, and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought." *Id.* at 13).

32. WFB employed 862 store managers who are putative class members during the period of January 7, 2008 through December 12, 2017.[32] These putative class members worked a total of 45,363 pay periods during the period of January 7, 2008 through December 12, 2017.[33]

33. Based on Cal. Labor Code §226(e), which provides that damages are the greater of all actual damages or $50 for the first violation and $100 for every violation thereafter, per employee, up to $4,000. Should Plaintiffs prevail on this claim on a class-

---

[32] *See* Brandenburg Dec., ¶ 7.
[33] *See* Brandenburg Dec., ¶ 7.

11

wide basis, each class member could be entitled to penalties of up to a statutory maximum of $4,000 — totaling $3,448,000 (862 putative class members x $4,000).

34. Notwithstanding, even if penalties are calculated individually for each Branch Manager, the total potential amount in controversy regarding these penalties is still (862 store managers x $50 [initial violation]) = $43,100 +  (43,363 total pay periods - 862 initial pay periods = 42,501 subsequent pay periods) x $100 (up to $4,000 maximum per putative class member employee) = **$2,464,250.00**.[34]

35. Thus the total amount in controversy based on the allegations concerning unpaid overtime wages, unpaid meal and rest break premiums, and waiting time penalties alone, using these conservative estimates, is at least **$15,794,967.60 ($3,719,689.47 + $6,468,523.42 + $3,142,507.20, + $2,464,250.00)**, well exceeding the jurisdictional threshold of $5,000.000.

36. **Attorneys' Fees**. The Complaint also alleges that putative class members are entitled to recover attorneys' fees. Requests for attorneys' fees must be taken into account in ascertaining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory). Attorneys' fees may be awarded based on the lodestar method (calculated by applying counsel's hourly rates to the time spent and a risk multiplier where appropriate). *Staton v. Boeing Co.*, 327 F. 3d 938, 968 (9th Cir. 2003). Alternatively, the court may simply award counsel a percentage of the fund recovered. *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1029 (9th Cir. 1998). The Ninth Circuit has established a benchmark of 25% of the recovery, which may be adjusted or replaced by a lodestar calculation "when specific circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F. 2d 1301, 1311 (9th Cir. 1990); *see also Muniz v. Pilot Travel Centers, LLC*, 2007 WL 1302504 * 4, fn 8 (E.D. Cal. May 1, 2007) (in

---

[34] *See* Brandenburg Dec., ¶ 7.

12

California, where wage and hour class actions have settled prior to trial an attorneys' fee award is typically 25% of their own damages award).

37. Thus, although WFB denies Plaintiffs' allegations and that Plaintiffs, or the putative class members that they purports to represent, is entitled to the relief for which they have prayed, based on Plaintiffs' allegations and prayer for relief, the amount in controversy clearly exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2).

38. Because diversity of citizenship exists – Plaintiffs are citizens of the state of California and WFB being a citizen of the state of South Dakota—and because the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of the action pursuant to 28 U.S.C. sections 1332(d)(2) and 1338. This action is therefore a proper one for removal to this Court.

## V. VENUE

39. Removal to this Court is proper pursuant to 28 U.S.C. §§ 1391(b) and 1441(a) because the state court action was filed in Los Angeles County.

## VI. NOTICE OF REMOVAL

40. Notice of this removal will promptly be served on Plaintiffs and the Clerk of the Superior Court of the State of California in and for the County of Los Angeles.

## VII. NO JOINDER REQUIRED

41. WFB has secured the consent of George Sarkis to remove this action. WFB has not secured the consent of the unnamed "DOE" Defendants before removing this action because WFB does not know the identity of the unnamed "DOE" Defendants and has no reason to believe that any of them have been properly served or have voluntarily appeared in this action. WFB has not secured the consent of Raul Vasquez because based on information and belief Vasquez has not been served with the Summons and Complaint in this action. However, pursuant to CAFA, WFB need not obtain the consent of any other defendant to remove this action. 28 U.S.C. § 1453(b). Further, under CAFA, WFB may remove the entire lawsuit without the joinder of any other defendants. *Abrego v.*

*The Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006) (any defendant may remove a class action without the consent or joinder of any other defendants); *United Steel, Paper & Forestry, Rubber Manufacturing Energy, Allied Industrial & Service Workers International Union, AFL-CIO, CLC v. Shell Oil Co.*, 549 F.3d 1204, 1208-09 (9th Cir. 2008) (under CAFA, one defendant may remove entire case without joinder of other defendants).

**WHEREFORE, WFB** prays that the above action pending before the Superior Court of the State of California for the County of Los Angeles be removed to the United States District Court for the Central District of California.

DATED:  December 29, 2017              SEYFARTH SHAW LLP


By: */s/ Jill A. Porcaro*
   Christian J. Rowley
   Jill A. Porcaro
   Robin Devaux
   Attorneys for Defendant
   WELLS FARGO BANK, N.A. and
   George Sarkis